UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAMORAK INSURANCE COMPANY, f/k/a ONEBEACON AMERICA INSURANCE COMPANY, <br><br> Plaintiff, <br><br> -against- <br><br> FULTON BOILER WORKS, INC., EMPLOYERS INSURANCE COMPANY OF WAUSAU, NATIONWIDE MUTUAL INSURANCE COMPANY, and TRAVELERS CASUALTY AND SURETY COMPANY, <br><br> Defendants, <br><br> and <br><br> FULTON BOILER WORKS, INC., <br><br> Third-Party Plaintiff, <br><br> -against- <br><br> BROWN & BROWN OF NEW YORK, INC., f/k/a THE YOUNG AGENCY, <br><br> Third-Party Defendant. | Case No. 5:13-CV-1525 [MAD/TWD] <br><br> Judge Mae A. D'Agostino, U.S.D.J. <br> Judge Thérèse Wiley Dancks, U.S.M.J. |

**FULTON BOILER WORKS, INC.'S BRIEF IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT REGARDING
TRAVELERS CASUALTY AND SURETY COMPANY'S NOTICE DEFENSE**

McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, NY 10019
Phone: 212.609.6800
Fax: 212.609.6921
Attorneys for Defendant/Third-Party Plaintiff
Fulton Boiler Works, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................................ 1

    A.    The Asbestos Lawsuits ................................................................................... 1

    B.    Fulton's Submission of the Asbestos Lawsuits to its Primary Insurers ......... 1

    C.    Travelers's Notice Defense in the Prior Coverage Action and this Court's Ruling ............................................................................................... 2

    D.    Travelers's Continued Assertion of Improper Notice for Thousands of Asbestos Lawsuits ......................................................................................... 4

    E.    Travelers's Notice Defense in the Present Litigation .................................... 5

    F.    Present Status of this Litigation ..................................................................... 6

ARGUMENT ............................................................................................................................ 7

    POINT I    EVIDENCE PROVES TRAVELERS RECEIVED PROPER NOTICE OF THOUSANDS OF ASBESTOS LAWSUITS ............................. 8

        A.    The September 17, 2008 List of Asbestos Lawsuits ..................................... 8

        B.    The Boxes of Asbestos-Lawsuit Pleadings Produced in 2009 in the Prior Coverage Action ................................................................................... 9

        C.    The August 2, 2012 List of Asbestos Lawsuits ........................................... 10

    POINT II    TRAVELERS FAILED TO ISSUE ITS COVERAGE DENIAL FOR THE ASBESTOS LAWSUITS AS SOON AS REASONABLY POSSIBLE ................................................................................................... 10

    POINT III    AT A MINIMUM, TRAVELERS CANNOT ASSERT LATE NOTICE FOR ASBESTOS LAWSUITS FOR WHICH IT RECEIVED NOTICE WITHIN A REASONABLE TIME OF WHEN IT ACKNOWLEDGED ITS POLICIES ............................................................ 11

CONCLUSION ...................................................................................................................... 13

ME1 27267398v.2

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)......................................................................................................7

*Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*,
  822 F.2d 267 (2d Cir. 1987)........................................................................................11

*Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co., et al.*,
  828 F. Supp. 2d 481 (N.D.N.Y. 2011)...................................................1, 2, 3, 4, 8, 9, 10, 11

*Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co., et al.*,
  No. 5:06-CV-1117, 2010 WL 1257943 (N.D.N.Y. March 25, 2010) ..............................2, 3, 12

*H. S. Equities, Inc. v. Hartford Acc. & Indem. Co.*,
  661 F.2d 264 (2d Cir. 1981).........................................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)......................................................................................................7

*Richardson v. N.Y. State Dep't of Corr. Serv.*,
  180 F.3d 426 (2d Cir. 1999).........................................................................................7

*Thompson v. Gjivoje*,
  896 F.2d 716 (2d Cir. 1990).........................................................................................7

**STATE CASES**

*Am. Trans. Ins. Co. v. Sartor*,
  3 N.Y.3d 71 (2004) .....................................................................................................11

*Moye v. Thomas*,
  544 N.Y.S.2d 675 (N.Y. App. Div. 1989) ..................................................................12

**STATUTES**

New York Insurance Law § 3420(d) ..........................................................................4, 10

**RULES**

Fed. R. Civ. P. 56...........................................................................................................7

## INTRODUCTION

Travelers Casualty and Surety Company ("Travelers") obstinately refuses to provide insurance coverage for thousands of asbestos lawsuits (the "Asbestos Lawsuits") filed against its policyholder, Fulton Boiler Works, Inc. ("Fulton"), on the ground that Travelers allegedly did not receive proper notice of them. This Court, however, held in prior litigation between the parties that Travelers cannot deny coverage for Asbestos Lawsuits as long as it "received, within a reasonable time, a complaint and/or letter identifying Fulton as the insured and any reasonably obtainable information regarding the injured parties and the nature of the occurrences." Evidence reveals Travelers received proper notice of thousands of Asbestos Lawsuits within the meaning of the Court's decision for which it should provide coverage. At a minimum, nevertheless, Travelers should not be permitted to assert late notice as long as it received sufficient notice before it acknowledged each of its policies.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Asbestos Lawsuits

Since the early 1990s, Fulton has been named as a defendant in thousands of Asbestos Lawsuits nationwide alleging bodily injury, wrongful death, and/or other damages arising out of boilers it manufactured that allegedly contained asbestos. *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co., et al.*, 828 F. Supp. 2d 481, 487 (N.D.N.Y. 2011). Fulton manufactured the boilers that allegedly contained asbestos from 1949 through the mid-1970s. *Id.* at 486.

### B.   Fulton's Submission of the Asbestos Lawsuits to its Primary Insurers

Fulton initially sought coverage for the Asbestos Lawsuits from Lamorak Insurance Company, f/k/a OneBeacon America Insurance Company, as successor to Commercial Union Insurance Company ("Lamorak"), as well as American Motorists Insurance Company and American Manufacturers Mutual Insurance Company (collectively, "Kemper"), which were the

1

ME1 27267398v.2

primary-layer liability insurers that Fulton knew of at the time. *Fulton*, 828 F. Supp. 2d at 487. Lamorak's predecessor sold a primary comprehensive general liability policy to Fulton for the period from October 1, 1980 through October 1, 1983, and Kemper sold successive primary policies to Fulton from October 1, 1984 through October 1, 1993. *Id.* at 486-87. Lamorak and Kemper agreed to provide coverage for the Asbestos Lawsuits under their primary policies. *Id.* at 487.

In 2001, Fulton discovered evidence that Travelers also had sold it primary liability insurance coverage and requested that Travelers search its files for copies of any applicable policies. *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co., et al.*, No. 5:06-CV-1117 (GTS/DEP), 2010 WL 1257943, *3 (N.D.N.Y. March 25, 2010). In January 2004, Travelers acknowledged the existence of a single policy year (number 52 SM 71856, which insures the period from October 1, 1979 through October 1, 1980), and agreed to participate in the defense of the Asbestos Lawsuits under that policy. *Id.* In April 2009, Travelers admitted it also had sold policy number 52 SM 801894 to Fulton, which insures the three-year period from October 1, 1976 through October 1, 1979. *Id.*

In 2005, Fulton discovered Nationwide Mutual Insurance Company ("Nationwide") and Employers Insurance Company of Wausau ("Wausau") had sold it primary liability policy number 0926-00-050984, which insures the period from October 1, 1983 through October 1, 1984. *Fulton*, 828 F. Supp. 2d at 487. Nationwide and Wausau agreed to provide coverage for the Asbestos Lawsuits to Fulton under that policy. *Id.*

### C.   Travelers's Notice Defense in the Prior Coverage Action and this Court's Ruling

On April 18, 2006, Fulton filed a lawsuit in New York Supreme Court against Lamorak and Kemper regarding the scope of insurance coverage available to Fulton for the Asbestos

Lawsuits. *Fulton*, 828 F. Supp. 2d at 485. Lamorak removed the action to this Court under the caption *Fulton Boiler Works, Inc. v. American Motorists Insurance Co., et al.*, No. 5:06-CV-1117 (N.D.N.Y.). *Id.* Lamorak and Kemper then brought third-party claims against Travelers, Wausau, and Nationwide. *Fulton*, No. 5:06-CV-1117 (GTS/DEP), 2010 WL 1257943, *1.

In the prior coverage action, Travelers asserted for the first time it had not received proper notice of any of the Asbestos Lawsuits and, therefore, had no obligation to provide coverage. *Fulton*, 828 F. Supp. 2d at 494-95. Travelers's late notice defense is based on the unique procedure used for asbestos litigation in New York City, where most of the Asbestos Lawsuits against Fulton have been filed. The New York Supreme Court has adopted the New York City Asbestos Litigation master file, which organizes asbestos cases for trial. Dkt. No. 83-1 at 2. Cases that meet a minimum level of injury are placed on an "Active Docket." *Id.* at 9-10. Unless they qualify for an "Accelerated Trial Cluster," cases on the "Active Docket" are handled on a first-in-first-out basis. *Id.* at 9-10. Cases that do not allege a minimum level of injury are placed on a "Deferred Docket" and stayed until further order of the Supreme Court. *Id.* at 7-8. Travelers's current notice defense focuses on cases placed on the "Deferred Docket" for many years based on its argument that it should have received notice of such cases before it allegedly did.

Nevertheless, in its December 9, 2011, Memorandum – Decision and Order, this Court found Travelers had received notice of many of the Asbestos Lawsuits and concluded Travelers's notice defense must be determined on a case-by-case basis. *Id.* at 495-97. Under that ruling, notice to Travelers is deemed proper for all Asbestos Lawsuits for "which [Travelers] received, within a reasonable time, a complaint and/or letter identifying Fulton as the insured and any reasonably obtainable information regarding the injured parties and the nature of the

occurrences." *Id.* at 497. The Court concluded that determining whether Travelers received proper notice would "require a case-by-case analysis of the underlying claims and documents provided to Travelers." *Id.*

In addition, the Court held, pursuant to New York Insurance Law § 3420(d), if notice was not proper, Travelers then was "obligated to disclaim coverage, if applicable, within a reasonable time after receiving the notice." *Id.* Travelers, however, did not disclaim coverage within a reasonable time for those Asbestos Lawsuits for which it received proper notice. *Id.* at 498. As a result, the Court concluded "Travelers is barred from now disclaiming coverage for any of the claims for which it received proper notice." *Id.*

### D. Travelers's Continued Assertion of Improper Notice for Thousands of Asbestos Lawsuits

After this Court entered judgment and closed the prior coverage action, Travelers wrote to Fulton on May 15, 2013, and provided a list of approximately 3,300 Asbestos Lawsuits for which it acknowledged notice. Dkt. No. 60-6, Ex. 1. Travelers, however, still denies receiving notice of thousands of Asbestos Lawsuits. *Id.* In its letter, Travelers stated that "it had recently discovered the existence of several other [Asbestos] Lawsuits that were referenced in status reports provided by defense counsel," but "denie[d] that its discovery of the lawsuits as a result of reviewing status reports prepared by defense counsel that pertain to numerous other asbestos lawsuits constitutes proper notice." *Id.* at 1.

Travelers has maintained its notice position even in the face of evidence presented by Fulton. For example, on April 8, 2015, Fulton responded to Travelers's assertion of improper notice for three Asbestos Lawsuits with evidence that Travelers received notice within the meaning of the December 9, 2011, Memorandum – Decision and Order. Dkt. No. 60-6, Ex. 2. Specifically, Fulton demonstrated that the three Asbestos Lawsuits had been included on a list of

4

pending claims that Fulton's defense counsel sent to Travelers in September 2008. *Id.* The list identified Fulton as the policyholder and provided information about the injuries and occurrences. *Id.* Travelers, however, refused to agree that the list qualified as notice within the meaning of the December 9, 2011, Memorandum – Decision and Order. Dkt. No. 60-6, Ex. 3.

### E. Travelers's Notice Defense in the Present Litigation

Lamorak filed this lawsuit on or about December 11, 2013. Dkt. No. 1. Lamorak named Fulton, Wausau, Nationwide, and Travelers as defendants. *Id.* Lamorak alleged, among other things, that Fulton must pay defense and indemnity costs for the Asbestos Lawsuits otherwise attributable to Kemper, which became insolvent by order of the Circuit Court of Cook County, Illinois on May 10, 2013. *Id.* at ¶ 3 - ¶ 4. Fulton, Lamorak, Wausau, and Nationwide subsequently reached a confidential settlement. *E.g.*, Dkt. No. 82 at 1, n.1.

In addition, Lamorak alleged Travelers refused to contribute toward defense and indemnity costs for Asbestos Lawsuits in which Travelers alleges it received late notice. *Id.* at ¶ 6. In the Ninth Separate Defense of Travelers's Answer and Separate Defenses to Complaint, Travelers asserted:

> To the extent the insured under the Travelers Policies had notice of conditions, events or damages referred to in the Complaint and failed to give timely notice to Travelers in accordance with the terms of the Travelers Policies and the December 9, 2011 Decision in the Initial Action, the claims asserted in the Complaint are barred, in whole or in part.

Dkt. No. 11.

On July 1, 2015, Fulton filed a motion for partial summary judgment regarding Travelers's late notice defense. Dkt. No. 60-1. Lamorak and Wausau joined Fulton's motion, while Travelers filed a cross-motion. Dkt. No. 84-2, No. 85, and No. 76-1. On March 28, 2016, the Court denied all motions on the procedural ground that no cross-claims had been pled between Fulton and Travelers. Dkt. No. 89 at 13. The Court subsequently granted Fulton's

motion for leave to file a cross-claim against Travelers on November 23, 2016. Dkt. No. 111. Fulton filed its Amended Answer and Cross-Claim against Travelers on December 5, 2016. Dkt. No. 113.

### F. Present Status of this Litigation

The parties completed fact depositions in early 2017. *E.g.*, Dkt. No. 118. On April 12, 2017, and May 12, 2017, Lamorak sought extensions of discovery deadlines to produce supplemental documents. Dkt. Nos. 119 and 121. The Court granted Lamorak until June 30, 2017, to serve its supplemental production. Dkt. No. 123. Lamorak subsequently produced more than 250,000 pages. Dkt. No. 127. In response to Travelers's motion, the Court ordered Lamorak to produce an index and table of contents for the documents. Dkt. Nos. 130 and 132. Fact discovery closed on September 29, 2017. Dkt. No. 123.

Following the close of fact discovery, the parties participated in an in-person settlement conference with Judge Dancks on January 16, 2018, as well as a subsequent telephone conference on February 9, 2018. Dkt. No. 140. During the telephone conference, the Court ordered Fulton and Lamorak to submit settlement proposals to Travelers by March 1, 2018. Dkt. No. 141. Fulton and Lamorak provided their settlement proposals to Travelers by the deadline and, pursuant to the Court's March 30, 2018 Text Order, filed status reports on May 7, 2018 and May 8, 2018 respectively. Dkt. Nos. 147 and 148. Travelers then provided its counter on May 10, 2018, just four days before the Court's May 14, 2018 status conference call. During the call, the Court established June 13, 2018 as the deadline for dispositive motions.

## ARGUMENT

Courts must grant summary judgment whenever the pleadings and affidavits show no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999). The movant has the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). If the moving party meets its burden, then the party opposing summary judgment must "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *Celotex Corp.*, 477 U.S. at 323. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In the prior coverage litigation, this Court established the parameters for determining whether Travelers may avoid coverage based on its late notice defense. First, if Fulton provided the type of information required by the December 9, 2011, Memorandum – Decision and Order within a reasonable time of the filing of an Asbestos Lawsuit, then Travelers has no basis to assert late notice. Second, if Fulton provided the type of information required by the Memorandum – Decision and Order, but did not submit it to Travelers within a reasonable time, then Travelers can avoid coverage <u>only</u> if it proves it denied coverage based on late notice as soon as reasonably possible. Evidence reveals Travelers did not deny coverage for the vast majority of Asbestos Lawsuits until months – or even years – after it received the type of information from Fulton required by the Memorandum – Decision and Order. Finally, the Court should preclude Travelers from denying coverage based on late notice as long as Travelers had notice of Asbestos Lawsuits within a reasonable time of the respective dates Travelers acknowledged the existence of each of its policies.

## POINT I

### EVIDENCE PROVES TRAVELERS RECEIVED PROPER NOTICE OF THOUSANDS OF ASBESTOS LAWSUITS.

Despite Travelers's insistence in the prior insurance coverage litigation that it did not receive proper notice of any of the Asbestos Lawsuits, the Court found that Travelers had received notice of many Asbestos Lawsuits through letters and lists provided by defense counsel:

> Travelers was sent numerous letters identifying Fulton as "Our Insured." Attached to each of these letters was a list of recently received asbestos-related claims. The lists included the names of the plaintiffs who filed the claims, the associated docket numbers, and the dates they were filed. These communications adequately identified the insured, provided the names of the injured parties, informed Travelers that the occurrences were related to asbestos exposure, and were provided to Travelers within a reasonable time. Even if these letters were not accompanied by a copy of the complaints, Brian Cocuzzo, Travelers' claims handler who began working on the Fulton account in June 2007, advised that "it would be natural for [him] to follow up and get a copy of the complaint." These letters thus satisfied the notice provisions.

*Fulton*, 828 F. Supp. 2d at 496 (citations omitted). The Court then established the standard for determining whether Travelers received proper notice: Travelers "must contribute its pro rata share of defense and indemnity costs ... for claims of which it received, within a reasonable time, *a complaint and/or letter identifying Fulton as the insured and any reasonably obtainable information regarding the injured parties and the nature of the occurrences.*" *Id.* at 497 (emphasis added). As set forth below, Travelers received proper notice of thousands of Asbestos Lawsuits within the meaning of the December 9, 2011, Memorandum – Decision and Order. Accordingly, for those lawsuits, Travelers's late notice defense fails as a matter of law.

### A.   The September 17, 2008 List of Asbestos Lawsuits

On September 17, 2008, Fulton's underlying asbestos defense counsel, Barry, McTiernan & Moore, provided Travelers with a list of pending Asbestos Lawsuits in New York, which Travelers had requested. Dkt. No. 60-7, Ex. 4 (the "September 2008 List"). For each of the

8

thousands of Asbestos Lawsuits, the list identifies, among other things, the claimant, court index number, and the alleged disease. *Id.* The correspondence and list, therefore, constitute proper notice of the listed Asbestos Lawsuits because they identify Fulton as the policyholder and set forth "reasonably obtainable information regarding the injured parties and the nature of the occurrences." *Fulton*, 828 F. Supp. 2d at 497. Thus, Travelers received proper notice of the Asbestos Lawsuits on the September 2008 List in September 2008.

### B. The Boxes of Asbestos-Lawsuit Pleadings Produced in 2009 in the Prior Coverage Action

During discovery in the prior insurance coverage litigation, Fulton made available to the insurers, including Travelers, approximately one-hundred boxes of documents at Fulton's Pulaski, New York location. Dkt. Nos. 60-4 and 60-5. The boxes contained pleadings and other file documentation related to the Asbestos Lawsuits listed on Exhibit "A" to the Affidavit of Michael Simmons. *Id.* at ¶ 3 and Ex. "A." In May 2009, OneBeacon's counsel came to Fulton's Pulaski, New York location, reviewed the boxes, and set eighteen boxes aside with documents flagged for copying. *Id.* at ¶ 4. The list attached as Exhibit "A" to Mr. Simmons' Affidavit was one of the documents flagged for copying in the eighteen boxes. *Id.* On or about July 9, 2009, a paralegal from the office of Travelers's counsel in the prior insurance coverage litigation also came to Fulton's Pulaski, New York location and reviewed all of the boxes, including the eighteen boxes set aside that contained the list. *Id.* at ¶ 5.[1] Fulton copied the flagged documents, including the list, and produced them to all parties in November 2009. *Id.* Thus, by virtue of reviewing the case list in July 2009 and receiving a copy of it in November 2009, Travelers received proper notice within the meaning of the December 9, 2011, Memorandum – Decision and Order of each of the Asbestos Lawsuits on Exhibit "A" to Mr. Simmons' Affidavit.

---

[1] Fulton advised Travelers during this litigation that the boxes are available for review again, but Travelers has not requested to re-review the boxes. *Id.* at ¶ 6.

### C. The August 2, 2012 List of Asbestos Lawsuits

Similarly, on August 2, 2012, in response to Travelers's request, Barry, McTiernan & Moore provided another list of all Asbestos Lawsuits filed against Fulton. Certification of Nicholas M. Insua, Exhibit 1 (the "August 2012 List"). That list, which spans 371 pages and which was somehow not produced by Travelers in this matter, identifies, for each Asbestos Lawsuit, the plaintiff and law firm, index number, date of filing, venue, and status. *Id.* Again, the August 2012 List provides Travelers with the information required by the December 9, 2011, Memorandum – Decision and Order to satisfy Fulton's notice obligation.

### POINT II

### TRAVELERS FAILED TO ISSUE ITS COVERAGE DENIAL FOR THE ASBESTOS LAWSUITS AS SOON AS REASONABLY POSSIBLE.

Although the evidence outlined in Point I establishes Travelers received proper notice of thousands of Asbestos Lawsuits between 2008 and 2012, Travelers failed to deny coverage based on late notice for the vast majority of them until its May 15, 2013 letter. Pursuant to this Court's December 9, 2011 Memorandum – Decision and Order, if Fulton provided, within a reasonable time, sufficient information to constitute proper notice, then Travelers has no basis to assert late notice.

However, even if Fulton did *not* provide the required information to Travelers within a reasonable time, then Travelers had to deny coverage based on late notice to Fulton "as soon as is reasonably possible." *Fulton*, 828 F. Supp. 2d at 495-98. Specifically, the Court found New York Insurance Law § 3420(d)(2), which obligates insurers to "disclaim liability or deny coverage ... as soon as is reasonably possible," applies to Travelers. *Fulton*, 828 F. Supp. 2d at 495-98. Based on that statute, the Court concluded "Travelers is barred from now disclaiming

10

coverage for any of the claims for which it received proper notice" because it failed to prove it "it disclaimed coverage for particular underlying claims in a timely manner." *Id.*

In sum, for all Asbestos Lawsuits for which Fulton provided untimely notice, but met the standard for proper notice within the meaning of the Memorandum – Decision and Order, Travelers must prove it denied coverage based on late notice "as soon as is reasonably possible." Travelers cannot meet its burden because, as stated, it failed to assert its late notice defense for nearly all of the Asbestos Lawsuits until its May 5, 2013 letter. As a result of Travelers's dilatory denial, it cannot avoid its coverage obligations based on late notice defense.

### POINT III

### AT A MINIMUM, TRAVELERS CANNOT ASSERT LATE NOTICE FOR ASBESTOS LAWSUITS FOR WHICH IT RECEIVED NOTICE WITHIN A REASONABLE TIME OF WHEN IT ACKNOWLEDGED ITS POLICIES.

Finally, any late notice defense cannot apply as long as Travelers had notice of Asbestos Lawsuits within a reasonable time of when it acknowledged the existence of each of its policies. Courts in New York recognize the purpose of notice provisions in liability policies is to allow an insurer "an opportunity to protect itself" by promptly investigating claims. *Am. Trans. Ins. Co. v. Sartor*, 3 N.Y.3d 71, 75 (2004). As the Second Circuit has explained, notice provisions "enable insurers to make a timely investigation of relevant events and exercise early control over a claim." *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987). When an insurer contends the policy does not provide coverage, it waives the notice requirement because it has no intention of controlling the claim. *H. S. Equities, Inc. v. Hartford Acc. & Indem. Co.*, 661 F.2d 264, 270 (2d Cir. 1981).

Because the purpose of notice provisions is to allow insurers to conduct prompt investigations and protect themselves, notice to Travelers before it acknowledged each policy

would have served no benefit. As stated, Travelers admitted the existence of policy number 52 SM 71856 (covering October 1, 1979 through October 1, 1980) in January of 2004, but did not acknowledge policy number 52 SM 801894 (covering October 1, 1976 through October 1, 1979) until April 2009. *Fulton*, 2010 WL 1257943 at *3. Travelers refused to take action under either policy for the Asbestos Lawsuits until the dates it admitted their existence. *See, e.g.*, Dkt. No. 60-11, Ex. 5 at 3 (stating "as we are not able to confirm the existence, terms and/or conditions of any such alleged policies, we are unable to confirm a duty to defend or indemnify Fulton Boilers under such alleged policies"). To hold that Fulton had to notify Travelers of Asbestos Lawsuits prior to Travelers acknowledging each policy would subvert the purpose of the notice requirement. *See Moye v. Thomas*, 544 N.Y.S.2d 675, 676 (N.Y. App. Div. 1989) (finding policyholder's failure to comply with policy condition requiring forwarding of suit papers to insurer would have been "useless act" because insurer previously had denied coverage).

As stated, Travelers did not acknowledge its three-year Policy No. 52 SM 801894 until April 2009. By that time, Travelers had received the September 2008 List and, within weeks, Travelers's counsel reviewed the boxes of pleadings in Fulton's headquarters. Travelers has no reasonable basis to assert late notice for thousands of Asbestos Lawsuits it knew of soon after admitting the existence of policy number 52 SM 801894. Travelers is grasping at any ground to avoid its coverage obligations. Accordingly, at a minimum, Travelers must provide coverage under policy number 52 SM 801894 for all Asbestos Lawsuits on the September 2008 List and/or included in the boxes of pleadings reviewed by Travelers's counsel in the prior coverage action in July 2009.

## CONCLUSION

The Court should order that Travelers must cover each of the Asbestos Lawsuits on the September 2008 List from Fulton's defense counsel, Exhibit "A" to Mr. Simmons' Affidavit, and the August 2012 List from Fulton's defense counsel.

                    Respectfully submitted,

                    Attorneys for Defendant/Third-Party Plaintiff
                    Fulton Boiler Works, Inc.

            By: *s/ Nicholas M. Insua*
                    Nicholas M. Insua (Bar Roll # 520377)
                    David C. Kane (Pro Hac Vice Bar Roll # 518939)
                    **McCarter & English, LLP**
                    Worldwide Plaza
                    825 Eighth Avenue, 31st Floor
                    New York, NY 10019
                    Phone: 212.609.6800
                    Fax: 212.609.6921

DATED: June 13, 2018