UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAMORAK INSURANCE COMPANY (f/k/a OneBeacon America Insurance Company),<br><br><br><br>                   Plaintiff,<br><br>v.<br><br>FULTON BOILER WORKS, INC., *et al*.,<br><br>                   Defendants. | Case No. 5:13-cv-01525-MAD-TWD |

---

### BRIEF OF DEFENDANT TRAVELERS
### IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
### FOR THE DISMISSAL OF FULTON'S CROSSCLAIM WHICH SEEKS PAYMENT OF
### KEMPER'S ALLOCATED SHARE OF DEFENSE COSTS

---

Stephen V. Gimigliano (No. 516595)
Robert W. Mauriello, Jr. (No. 516594)
Jennifer L. Schoenberg (No. 519378)
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P. O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360
3 Park Avenue, 22nd Floor
New York, New York 10016
(646) 859-5800

Attorneys for Defendant
Travelers Casualty and Surety Company
(f/k/a The Aetna Casualty and Surety
Company)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

    I.     The Asbestos Claims .................................................................................. 3

    II.    *Fulton I* – "Ground Rules" ....................................................................... 4

         A.     The March 25, 2010 Order .......................................................... 5

         B.     The December 9, 2011 Order ...................................................... 5

    III.    Liquidation of AMICO and AMM ............................................................ 7

    IV.    *Fulton II* - The 2013 Fulton State Court Action ...................................... 8

    V.    The Lamorak Action .................................................................................. 9

         A.     Prior Dispositive Motions Regarding Kemper Insolvency .................... 10

ARGUMENT ..................................................................................................................... 11

    I.     TRAVELERS IS ENTITLED TO THE DISMISSAL OF FULTON'S
         CROSSCLAIM WHICH SEEKS CONTRIBUTION FOR AND
         REIMBURSEMENT OF DEFENSE COSTS ALLOCATED TO
         KEMPER'S POLICY YEARS ............................................................... 11

         A.     The Court in *Fulton I* Already Determined That Defense And
            Indemnity Costs for the Asbestos Claims Must Be Allocated
            On A Pro Rata, Time-On-The-Risk Basis .............................. 12

         B.     Fulton Has Responsibility For All Shares Allocated to Kemper's
            Policy Years ............................................................................. 15

CONCLUSION ................................................................................................................... 21

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          <u>Page</u>

*In re Ancillary Receivership of American Manufacturers Mut. Ins. Co.,*
   No. 400533/2013 (N.Y. Sup. Ct. June 19, 2013)................................................................19

*In re Ancillary Receivership of American Motorists Ins. Co.,*
   No. 400532/2013 (N.Y. Sup. Ct. June 19, 2013)................................................................19

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)...........................................................................................................11

*Atl. Mut. Ins. Co. v. Atl. Nat'l Ins. Co.,*
   38 A.D.2d 517 (1st Dep't 1971),
   *aff'd,* 33 N.Y.2d 817 (N.Y. 1973)....................................................................................14

*Avondale Indus., Inc. v. Travelers Indem. Co.,*
   774 F. Supp. 1416 (S.D.N.Y. 1991)..................................................................................13

*Breed v. Insurance Co. of North America,*
   46 N.Y.2d 351 (1978) .......................................................................................................17

*Cascio v. Nettles,*
   No. 09-CV-1128 (GTS/DRH), 2011 WL 3847337
   2011 U.S. Dist. LEXIS 97200 (N.D.N.Y. August 30, 2011)...........................................11

*Consolidated Edison Co. v. Allstate Insurance Co.,*
   98 N.Y.2d 208 (2002) .......................................................................................................13

*Celotex v. Catrett,*
   477 U.S. 317 (1986)...........................................................................................................11

*Cont'l Cas. Co. v. Emplrs Ins. Co. of Wausau,*
   22 Misc. 3d 729 (N.Y. Sup. Ct. Oct. 14, 2008)  ......................................................16-17

*Fed. Ins. Co. v. Atl. Nat'l Ins. Co.,*
   25 N.Y.2d 71 (1969) .........................................................................................................14

*Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co,*
   No. 06-CV0-1117 (GTS/DEP),
   2010 WL 1257943 (N.D.N.Y. Mar. 25, 2010) .............................................................13

*Keyspan Gas East Corp. v. Munich Reinsurance America, Inc.,*
   31 N.Y.3d 51 (2018) ...................................................................................................13, 18

*Martin v. Cohoes*,
   37 N.Y.2d 162 (1975) ................................................................................12

*Mt. McKinley Ins. Co. v. Corning Inc.*,
   No. 602454/2002,
   2012 WL 7984466, 2012 N.Y. Misc. LEXIS 6531,
   2012 N.Y. Slip Op. 33555(U) (N.Y. Sup. Ct. Sept. 7, 2012) .................................. 16-18

*NL Indus., Inc. v. Commercial Union Ins. Co.*,
   926 F. Supp. 446 (D.N.J. 1996) ....................................................................14

*Nat'l Grange Mut. Ins. Co. v. Cont'l Cas. Ins. Co.*,
   650 F. Supp. 1404 (S.D.N.Y. 1986)............................................................... 13-14

*Noment Mgt. Corp. v. Virgina Surety Co., Inc.*,
   No. 600612/2008,
   2012 WL 10007753, 2012 N.Y. Misc. LEXIS 6656,
   2012 N.Y. Slip. Op. 33697(U) (N.Y. Sup. Ct. Apr. 2, 2012) .......................................16

*Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co. of Pittsburgh*,
   21 N.Y.3d 139 (2013) ...............................................................................13

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
   73 F.3d 1178 (2d Cir. 1995),
   *as modified by,* 85 F.3d 49 (2d Cir. 1996) ................................................... 12, 15-16

*Travelers Ins. Co. v. State Ins. Fund*,
   588 N.Y.S.2d 973, 155 Misc. 2d 542 (N.Y. Ct. Cl. 1992)...........................................14

*Travelers Ins. Co. v. Commissioners of the State Ins. Fund*,
   227 A.D.2d 208 (1st Dep't),
   *appeal denied*, 89 N.Y.2d 803 (N.Y. 1996)........................................................14

*U.S. v. Barber*,
   993 F. Supp. 138 (N.D.N.Y 1998) ..................................................................11

*In re Viking Pump*,
   27 N.Y.3d 244 (2016) ...............................................................................13

## Statutes & Rules

N.Y. Ins. Law § 7432....................................................................................19

*Fed. R. Civ. P.* 56 ......................................................................................11

PRELIMINARY STATEMENT

Defendant Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company) ("Travelers") respectfully submits this brief in support of Travelers motion for partial summary judgment, dismissing all claims asserted against it which seek contribution, in whole or in part, for defense costs allocated to the policy periods of the now-insolvent American Motorists Insurance Company and American Manufacturers Mutual Insurance Company (collectively, "Kemper").

With discovery now closed, Travelers motion for partial summary judgment as to Fulton's Crossclaim (which seeks the payment of Kemper's share of defense costs) is now ripe for resolution by this Court.  As discussed below, under New York law, the March 25, 2010 Order entered in *Fulton I* (as defined below) and the terms of the Travelers Policy, Fulton – not Travelers (or any of Fulton's other solvent insurers) – is responsible for the payment of any defense (and indemnity) costs that would otherwise be allocated to the policy periods of an insolvent insurer.

By way of background, on March 25, 2010 and December 9, 2011, the court in *Fulton I* issued decisions which provided the framework for Fulton and its primary insurers, including Travelers, to resolve disputes regarding the parties' respective obligations to contribute to defense and indemnity costs for past, pending and future asbestos bodily injury claims (the "Asbestos Claims") asserted against Fulton.  These decisions expressly stated that, in accordance with New York law, Travelers obligation to contribute to the payment of defense and indemnity costs for properly noticed Asbestos Claims is limited to Travelers pro rata share of defense and indemnity costs based on the four years of acknowledged coverage, 1976 to 1980.  At that time,

Kemper and Fulton's other insurers also were ordered by this Court to pay their respective allocated pro rata share of defense and indemnity costs.

In May 2013, less than two years after *Fulton I* concluded, one of Fulton's primary insurers, Kemper, was declared to be insolvent and placed in liquidation.  Courts applying New York law have held that when a policyholder's insurer has been declared insolvent, the policyholder – not the policyholder's other solvent insurers – has the obligation to pay for the pro rata share of defense and indemnity costs allocated to the insolvent insurer's policy years.  However, in its Crossclaim, Fulton now requests that this Court disregard *Fulton I* and prevailing New York law and, instead, order Travelers to step into Kemper's shoes and pick up all defense costs allocated to Kemper's policy years.  Moreover, Fulton's Crossclaim also conveniently omits the pertinent fact that Fulton has already sought to have the New York Liquidation Bureau pay the defense costs allocated to Kemper's policy years.  As a result, there likely would be no reason for Fulton or Travelers (or any other party) to this action to have to pay for the defense costs allocated to Kemper's policy years.  As a result, Fulton's Crossclaim fails both as a matter of fact and law and should be dismissed by this Court.

In addition, there is no dispute that Fulton also is responsible for the payment of indemnity costs that would otherwise be allocable to Kemper's policy years.  Not only did the December 9, 2011 Order address Fulton's responsibility for those costs and any other periods in which Fulton was uninsured or underinsured, Fulton also has conceded during prior motion practice in the current action that it is responsible for Kemper's pro rata share of indemnity costs.  As a result, under New York allocation law and principles of res judicata, this Court should dismiss Fulton's Crossclaim as to Travelers.

<u>STATEMENT OF FACTS</u>

This insurance coverage action arises, in part, from two orders entered by the United States District Court for Northern District of New York in a prior declaratory judgment action between Fulton and its primary insurers – Kemper, Lamorak Insurance Company (f/k/a OneBeacon America Insurance Company) ("Lamorak"),[1] Employers Insurance Company of Wausau and Nationwide Mutual Insurance Company ("Wausau") and Travelers (collectively, the "Primary Insurers") – entitled *Fulton Boiler Works, Inc. v. American Motorists Ins. Co.*, Civil No. 5:06-cv-1117 (DNH) (DEP) (the "*Fulton I*"). (Lamorak Complaint, Exh. A to Affirmation of Robert W. Mauriello, Jr. ("Mauriello Affirm."), at ¶1, 43-53). Specifically, the Court in *Fulton I* issued decisions and orders on March 25, 2010 and December 9, 2011 which provided the "ground rules" for the parties to resolve disputes regarding the parties' respective obligations to contribute to defense and indemnity costs for past, pending and future asbestos bodily injury claims asserted against Fulton. (Decision and Order in *Fulton I*, dated March 25, 2010 ("March 25, 2010 Order"), Exh. B to Mauriello Affirm.); (Memorandum-Decision and Order in *Fulton I*, dated December 9, 2011 ("December 9, 2011 Order"), Exh. C to Mauriello Affirm.).

I. <u>The Asbestos Claims</u>

As found by this Court in *Fulton I*, in the early 1990s, Fulton, a manufacturer and seller of boilers, apparently began to be named as a defendant "in thousands of civil lawsuits alleging exposure to asbestos from its boilers" (the "Asbestos Claims"). (December 9, 2011 Order, at 5). Fulton initially tendered the Asbestos Claims to Lamorak (which issued a primary liability policy to Fulton from October 1, 1980 through October 1, 1983) and to Kemper (which

---

[1] In *Fulton* I, Lamorak was known as OneBeacon America Insurance Company ("OneBeacon"); however, during the current action, OneBeacon changed its name to Lamorak and the caption of this case was updated to reflect this name change.

issued successive primary liability policies to Fulton from October 1984 through September 1993).  (Id. at 5-6).  In response, from 1992 to 2005, Lamorak and Kemper agreed to defend Fulton and "shared the costs of [Fulton's] defense of the Asbestos Claims."  (March 25, 2010 Order, at 7).

In January 2004, Travelers confirmed the existence of a primary-level liability policy issued to Fulton from October 1, 1979 to October 1, 1980 (the "1979-80 Travelers Policy") and agreed to participate in the defense of the Asbestos Claims under the 1979-80 Travelers Policy.  (March 25, 2010 Order, at 7).[2]  In addition, Wausau allegedly issued a primary-level liability policy to Fulton from October 1, 1983 to October 1, 1984.  (December 9, 2011 Order, at 6).

II.  *Fulton I* - "Ground Rules"

On April 25, 2006, Fulton filed a declaratory judgment action against Kemper and Lamorak in the New York State Supreme Court, Oswego County.  (Lamorak Complaint, Exh. A to Mauriello Affirm., at ¶43).  Lamorak removed the action to this Court on September 18, 2006.  (Id.).  Kemper and Lamorak then filed Third Party Complaints on November 9, 2006 and July 23, 2007, respectively, against Travelers and Wausau.  (Id. at ¶ 44-45).

On December 19, 2008, Fulton filed an Amended Complaint against Travelers, Lamorak, Kemper and Wausau, seeking a declaration that the Primary Insurers were obligated to fully defend and indemnify Fulton in connection with the Asbestos Claims and alleging claims for breach of contract against the Primary Insurers and equitable estoppel and/or waiver against Kemper and Lamorak.  (See id. at ¶46); (see also March 25, 2010 Order, at 4-5).  In response, the

---

[2] This Court ultimately found in *Fulton I* that Travelers had issued policies to Fulton from 1976-80 based upon secondary evidence, despite the fact that neither Fulton nor Travelers had been able to locate copies of those other insurance policies.  (December 9, 2011 Order, at 5).

Primary Insurers asserted counterclaims for declaratory judgment against Fulton, seeking determinations that Fulton was obligated to pay its pro rata share of defense and indemnity costs incurred as a result of the Asbestos Claims, and various cross-claims against each other.  (See December 9, 2011 Order, at 3); (see also March 25, 2010 Order, at 6-7).

A.   The March 25, 2010 Order

On April 30, 2009, Fulton filed a motion for partial summary judgment seeking a declaration that the Primary Insurers have an obligation to fully defend Fulton for the Asbestos Claims.  (See March 25, 2010 Order, at 8-9).  In response, on June 8, 2009, Travelers opposed Fulton's motion and cross-moved for partial summary judgment against Fulton on the grounds that Fulton must pay its pro rata share of defense costs for the Asbestos Claims.[3] (Id. at 9).

On March 25, 2010, the Honorable Glenn T. Suddaby, U.S.D.J. issued a decision and order (the "March 25, 2010 Order"), determining that (1) the Primary Insurers are obligated "to pay all of [Fulton's] outstanding defense costs in the underlying lawsuits"; (2) "with regard to future defense costs in the underlying lawsuits . . . '[s]o long as the allegations in a case could conceivably result in liability covered by a policy at issue, [the Primary Insurers] must defend'"; and (3) "with regard to allocation of expenses among [the Primary Insurers], pro rata allocation is the applicable standard." (Id. at 17).

B.   The December 9, 2011 Order

On June 29, 2010, Travelers filed a motion for partial summary judgment seeking a declaration that Fulton is obligated to pay its pro rata share of past and future indemnity costs for the Asbestos Claims.  (See December 9, 2011 Order, at 4)  Lamorak also moved for partial summary judgment against Travelers, seeking an order that Travelers must contribute its pro rata

---

[3] Lamorak and Wausau also filed cross-motions for summary judgment.  (Id.).

share of defense and indemnity for <u>all</u> Asbestos Claims against Fulton and reimburse Lamorak

for Lamorak's alleged overpayment of defense and indemnity payment since 2001.  (Id. at 4).

On July 29, 2010, in response to Lamorak's motion, Travelers cross-moved for partial summary

judgment against Lamorak on the grounds that Travelers was not obligated to contribute to

defense or indemnity payments for Asbestos Claims that have not been tendered to Travelers.

(Id. at 5).

On December 9, 2011, the Honorable David N. Hurd, U.S.D.J. issued a

Memorandum-Decision and Order (the "December 9, 2011 Order") determining, in part, that

"Travelers must contribute its pro rata share of defense and indemnity costs based on the four

years of acknowledged coverage, 1976-1980, for claims of which it received, within a reasonable

time, a complaint and/or letter identifying Fulton as the insured and any reasonably obtainable

information regarding the injured parties and the nature of the occurrences."  (Id. at 24).  Thus,

"Travelers must contribute a pro rata share of defense and indemnity costs related <u>only</u> to claims

for which it received proper notice" as defined in the Court's December 9, 2011 Order.  (Id. at

27) (emphasis in original).  As explained by Judge Hurd, "[t]his will require a case-by-case

analysis of the underlying claims and documents provided to Travelers."  (Id.).  Accordingly, the

Court denied "the other insurers' motion for an order declaring that Travelers must contribute to

<u>all</u> defense and indemnity payments made after October 10, 2011." (Id. at 24) (emphasis added).

The Court also stated that "the Second Circuit has explicitly endorsed a

'proration-to-the-insured approach' by which a pro rata share of liability is assigned to the

insured for any uninsured or insufficiently insured portion of time during a particular claimant's

injury."  (Id. at 11-12) (citing *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178,

1202-03 (2d Cir. 1995)).  Accordingly, the Court concluded that "the liability for a particular

claim should be prorated according to the time each defendant provided coverage during the overall time period the injury-in-fact was occurring" and that "Fulton must be assigned a pro rata share of indemnity costs for any uninsured or insufficiently insured portion of a particular claimant's injury." (Id. at 12).

The Court made clear that: "These two orders resolve all declaratory matters raised by the parties and provide the 'ground rules' by which the parties are now bound as they resolve past, pending, and future Asbestos Claims." (Id. at 26-27). Thereafter, on December 9, 2011, the Clerk of the Court entered judgment (the "December 9, 2011 Judgment") and closed the Fulton Action. (See Judgment in a Civil Case, Exh. D to Mauriello Affirm.).

## III.  Liquidation of AMICO and AMM

On May 8, 2013, the Circuit Court of Cook County, Illinois entered Orders of Liquidation with Findings of Insolvency which, effective May 10, 2013, placed American Motorists Insurance Company ("AMICO"), American Manufacturers Mutual Insurance Company ("AMM") and Lumbermens Mutual Casualty Company ("Lumbermens") in liquidation. (Orders of Liquidation with Findings of Insolvency, dated May 8, 2013, Exhs. E-F to Mauriello Affirm.). On December 31, 2014, AMICO and AMM merged into Lumbermens. (Certificates of Merger and Merger Agreements, Exh. G. to Mauriello Affirm.).

On June 19, 2013, the Superintendent of Financial Services of the State of New York was appointed as ancillary receiver (the "Ancillary Receiver") of AMM and AMICO. (Notices, dated October 23, 2013, Exh. H-I to Mauriello Affirm.). Thereafter, on October 22, 2013, the Supreme Court of New York, New York County entered orders establishing November 10, 2014 as the deadline to file proof of claims, including contingent claims, and November 10, 2015 as the deadline to file supporting documents for contingent claims with the Director of

Insurance of the State of Illinois.  (Orders, dated October 22, 2013, Exhs. J-K to Mauriello

Affirm.).  The court also ordered the Ancillary Receiver to provide notice of the claim filing

deadlines to all creditors, claimants and interested persons located in the State of New York.

(Id.).  It is Travelers understanding that Fulton applied to the New York Liquidation Bureau for

payment of Kemper's share of allocated defense and indemnity costs for the underlying Asbestos

Claims.  (Affidavit of Robert Stephen Lightfoot ("Lightfoot Aff."), at ¶5).  Under a full

reservation of rights, and since the time that Kemper stopped paying due to its insolvency,

Travelers has been paying a percentage share of Kemper's allocated defense costs (but not

Kemper's allocated share of indemnity costs).  (Lightfoot Aff., ¶7). [4]   It is Travelers further

understanding that the New York Liquidation Bureau is processing, and has not rejected,

Fulton's application for the payment of Kemper's share.  (Id. at ¶6); (see also Emails from

Kenneth Fischer of New York Liquidation Bureau, dated January 22, 2016 and July 28, 2016,

Lightfoot Aff., Exh. A).

IV.    *Fulton II – The 2013 Fulton State Court Action*

On November 18, 2013, Fulton filed an action against Travelers in the Supreme

Court of New York, Oswego County ("*Fulton II*") alleging that Travelers is in contempt of the

March 25, 2010 Order and seeking a declaration that Travelers violated the March 25, 2010

Order.  (*Fulton II* Complaint, Exh. L to Mauriello Affirm., at ¶¶ 54-64).  On January 30, 2014,

---

[4] Travelers expects that it would be reimbursed for amounts that it has now overpaid when
Fulton's application with the New York Liquidation Bureau is approved.  And, Travelers has
reserved its right to recoup the percentage share of Kemper's allocated defense costs even if the
New York Liquidation Bureau does not approve the application.

Travelers moved to dismiss and/or sever the claims asserted by Fulton[5] against Travelers and/or stay *Fulton II* in its entirety in favor of the current Lamorak Action (as defined below).  On March 19, 2014, with the consent of Fulton, the Court dismissed *Fulton II* pending resolution of the Lamorak Action.  (Order, dated March 20, 2014, Exh. M to Mauriello Affirm.).

V.   The Lamorak Action

      On December 11, 2013, Lamorak filed the current declaratory judgment action against Fulton, Travelers and Wausau (the "Lamorak Action").  (See Lamorak Complaint, Exh. A to Mauriello Affirm.).  In its Complaint, Lamorak asserts claims for contribution of defense and indemnity costs against Fulton and claims for equitable contribution as to Fulton and Travelers.  (Id. at ¶¶ 73-76).  More specifically, Lamorak seeks a determination that Fulton must contribute its pro rata share of defense and indemnity costs for those periods in which Fulton was uninsured due to the insolvency of Kemper.  (Id.).  Lamorak also alleges that it is entitled to reimbursement from Travelers "for amounts paid toward the defense and/or indemnity of Fulton in certain Underlying Lawsuits that are attributable to Travelers, but for which Travelers has refused to contribute due to Fulton's alleged failure to provide timely notice of the claim or suit, regardless of whether Travelers has adequately disclaimed on the ground of late notice." (Id. at ¶ 83).  On January 6, 2014, Travelers filed an Answer and Separate Defenses to the Complaint, denying the allegations asserted against it.[6] (Mauriello Affirm., Exh. Q).

---

[5] Although not relevant for purposes of this motion, Fulton also asserted claims against Fulton's broker, Brown & Brown of New York, Inc., f/k/a The Young Agency, which was a third-party defendant in the Lamorak Action until the end of July 2016.

[6] On January 27, 2014, Wausau also filed an Answer and Affirmative Defenses to the Complaint and Crossclaims against Fulton and Travelers for contribution and reimbursement of defense and indemnity costs for the Asbestos Claims.  (Dkt. No. 14).  It is Travelers understanding that Wausau is no longer seeking contribution and reimbursement of defense and indemnity costs for the Asbestos Claims from Travelers.  (Mauriello Affirm. ¶21).

On December 5, 2016, Fulton filed a Crossclaim against Travelers, in part, seeking a declaration that Travelers must fund "all settlements and judgments that otherwise would have been covered by Kemper." (Mauriello Affirm., Ex. R).[7]  On December 19, 2016, Travelers filed an Answer and Separate Defenses to Fulton's Crossclaim, denying the allegations asserted against it.  (Mauriello Affirm., Ex. S).

A.   Prior Dispositive Motions Regarding Kemper Insolvency

On July 1, 2015, Fulton filed a motion for partial summary judgment against all parties seeking a declaration that Fulton has no obligation to pay any portion of the defense costs otherwise allocable to Kemper.  (Dkt. No. 59).  In response, Travelers opposed Fulton's motion and cross-moved for partial summary judgment, seeking a determination that Travelers has no obligation to pay for, in whole or in part, defense costs for the Asbestos Claims which are allocated to the policy years of Kemper.  (Dkt. No. 78).

On March 28, 2016, the Court denied Fulton's motion and Travelers cross-motion for partial summary judgment.[8]  (Dkt. No. 89).  Thereafter, Fulton moved for reconsideration of the Court's March 28, 2016 Order and also sought leave to assert a crossclaim against Travelers. (Dkt. No. 91).  On November 23, 2016, the Court denied Fulton's motion for reconsideration but permitted Fulton to file a crossclaim against Travelers.  (Dkt. No. 111).

---

[7] Fulton also previously filed a third party complaint against its broker, Brown & Brown of New York, Inc., f/k/a The Young Agency ("Brown & Brown"), alleging claims for breach of contract, negligence and seeking a determination that Brown & Brown must indemnify and hold harmless Fulton pursuant to certain contracts between Fulton and Brown & Brown; however, in or around July 2016, Fulton dismissed its claims against Brown & Brown without prejudice. (Dkt. Nos. 109-110).

[8] The Court denied these motions on procedural and jurisdiction grounds only because, at that time, no crossclaims were pending between Fulton and Travelers. (Id.)  Prior to the Court's resolution of these motions, Lamorak settled with Fulton and Wausau.  (Id. at 10).

<u>ARGUMENT</u>

I.    TRAVELERS IS ENTITLED TO THE DISMISSAL OF FULTON'S CROSSCLAIM
      WHICH SEEKS CONTRIBUTION FOR AND REIMBURSEMENT OF DEFENSE
      COSTS ALLOCATED TO KEMPER'S POLICY YEARS

        This Court should grant Travelers motion for partial summary judgment and

dismiss Fulton's Crossclaim and any other claims asserted against it which seek payment from

Travelers any defense costs[9] allocated to the policy periods of the now-insolvent Kemper.

        Summary judgment is appropriate "if the pleadings, depositions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to summary judgment as a matter of law." *Fed. R. Civ. P.* 56(c).  In

opposing a motion for summary judgment, the non-moving party must raise "more than a mere

scintilla of evidence in its favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Similarly, the non-moving party "cannot rely on unsupported assertions, conclusory allegations,

or mere suspicions in attempting to survive a motion for summary judgment."  *U.S. v. Barber*,

993 F. Supp. 138, 139-140 (N.D.N.Y 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 325 (1986)).

        Here, as discussed below, this Court already determined in *Fulton I* that Travelers

obligation to contribute to defense and indemnity costs for the Asbestos Claims is limited to

Travelers pro rata share of such costs for properly noticed Asbestos Claims.  There is no reason

for this Court to revisit its prior decisions under res judicata principles.  *See, e.g., Cascio v.

Nettles,* No. 09-CV-1128 (GTS) (DRH), 2011 U.S. Dist. LEXIS 97200, at *16-17, 2011 WL

3847337 2011 (N.D.N.Y. August 30, 2011) ("The doctrine of res judicata or claim preclusion is

based on the theory that a judgment reached on the merits bars subsequent actions between the

same parties or privies based on the same cause of action. . . .  Essentially, it 'precludes the

_____

[9] Fulton previously admitted in this action that Fulton is responsible for the payment of
Kemper's pro rata share of indemnity costs for the Asbestos Claims and Fulton's Crossclaim
does not allege that it seeks such costs from Travelers in this action.  (See Dkt No. 82).

- 11 -

parties or their privies from relitigating issues that were or could have been raised in th[e prior] action.'") (citations omitted); *Martin v. Cohoes*, 37 N.Y.2d 162, 165 (1975) ("The doctrine of the 'law of the case' is a rule of practice, an articulation of sound policy that, when an issue is once judicially determined, that should be the end of the matter as far as Judges and courts of co-ordinate jurisdiction are concerned.").

    A.   The Court in *Fulton I* Already Determined That Defense And Indemnity Costs For The Asbestos Claims Must Be Allocated On A Pro Rata, Time-On-The-Risk Basis

As a preliminary matter, consistent with the Court's prior decisions in *Fulton I* and New York law, any allocation of defense and indemnity costs among the parties must be made in accordance with the pro rata, time-on-the risk methodology.  (See March 25, 2010 Order, at 17) (holding that "with regard to allocation of expenses among Defendants, pro rata allocation is the applicable standard"); (December 9, 2011 Order, at 12) ("[T]he liability for a particular claim should be prorated according to the time each defendant provided coverage during the overall time period the injury-in-fact was occurring.").

The United States Court of Appeals for the Second Circuit has explained that under the pro rata, time-on-the-risk approach, "each triggered policy [is] responsible for only a pro rata share [of the underlying liability].  The share [is] determined by multiplying the judgment or settlement by a fraction that has as its denominator the entire number of years of the claimant's injury, and as its numerator the number of years within that period when the policy was in effect." *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1202 (2d Cir. 1995), *as modified by,* 85 F.3d 49 (2d Cir. 1996).  The New York Court of Appeals has made equally clear that, under pro rata allocation, "an insurer's liability is limited to sums incurred by the insured during the policy period; in other words, each insurance policy is allocated a 'pro

rata' share of the total loss representing the portion of the loss that occurred during the policy period."  *Keyspan Gas East Corp. v. Munich Reinsurance America, Inc.*, 31 N.Y.3d 51, 58 (2018) (quoting *In re Viking Pump*, 27 N.Y.3d 244, 256 (2016)); *see also Consolidated Edison Co. v. Allstate Ins. Co.,* 98 N.Y.2d 208, 224 (2002) ("*Con Ed*") (concluding that "joint and several allocation is not consistent with the language of the policies providing for indemnification of 'all sums' of liability that resulted from an accident or occurrence *during the policy period*.")  The Court of Appeals held in *Con Ed* that pro rata allocation "is consistent with the language of the policies" because "the policies provide indemnification for liability incurred as a result of an accident or occurrence during the policy period, not outside that period."  *Id.*; *Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co. of Pittsburgh,* 21 N.Y.3d 139, 154-55 (2013) (citing *Con Ed*); *Viking Pump*, 27 N.Y.3d at 258 (observing that, under *Con Ed*, "in the absence of language weighing in favor of a different conclusion, pro rata allocation was the preferable method of allocation in long-tail claims in light of the inherent difficulty of tying specific injuries to particular policy periods")

As recognized by this Court in *Fulton I* and numerous other state and federal courts applying New York law, the pro rata, time-on-the-risk methodology applies to the allocation of both indemnity and defense costs.  *See Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co,* No. 06-CV0-1117 (GTS/DEP), 2010 WL 1257943, at *8 (N.D.N.Y. Mar. 25, 2010) (holding that "with regard to allocation of expenses among [the primary insurers], pro rata allocation is the applicable standard"); *Avondale Indus., Inc. v. Travelers Indem. Co.,* 774 F. Supp. 1416, 1436-37 (S.D.N.Y. 1991) (applying New York law and a pro rata allocation methodology to defense costs, in part because "apportionment of defense costs [should] follow the method for apportionment of indemnification costs"); *Nat'l Grange Mut. Ins. Co. v. Cont'l*

*Cas. Ins. Co.*, 650 F. Supp. 1404, 1413 (S.D.N.Y. 1986) (holding that "each insurer is obligated

to contribute, pro rata, in proportion to their respective undertaking toward legal fees and other

expenses of litigation"); *Fed. Ins. Co. v. Atl. Nat'l Ins. Co.*, 25 N.Y.2d 71, 78-79 (1969) ("As

both policies assumed the same risk, both were obligated to defend . . . and both must contribute,

pro rata, toward payment of the cost of the settlement and legal fees and other expenses of the

litigation."); *Atl. Mut. Ins. Co. v. Atl. Nat'l Ins. Co.*, 38 A.D.2d 517, 518 (1st Dep't 1971) (same),

*aff'd*, 33 N.Y.2d 817 (N.Y. 1973); *Mt. McKinley Ins. Co. v. Corning Inc.*, No. 602454/2002,

2012 WL 7984466, 2012 N.Y. Misc. LEXIS 6531, 2012 N.Y. Slip Op. 33555(U) (N.Y. Sup. Ct.

Sept. 7, 2012) (Bransten, J.) (allocating indemnity and defense costs on a pro rata, time-on-the-

risk basis among policyholder's insurers for underlying asbestos bodily injury claims); *Travelers

Ins. Co. v. State Ins. Fund*, 588 N.Y.S.2d 973, 973, 155 Misc. 2d 542, 544 (N.Y. Ct. Cl. 1992)

("The law is clear, and the parties do not dispute, that where, as here, there are two insurers who

have both covered the same insured with respect to the same risk 'both must contribute, pro rata,

toward the payment of the cost of the settlement and legal fees and other expenses of the

litigation."), *subsequent appeal sub nom. at Travelers Ins. Co. v. Commissioners of the State Ins.

Fund*, 227 A.D.2d 208 (1st Dep't), *appeal denied*, 89 N.Y.2d 803 (N.Y. 1996); *NL Indus., Inc. v.

Commercial Union Ins. Co.,* 926 F. Supp. 446 (D.N.J. 1996) (applying New York law).

Here, the court in *Fulton I* made clear that the obligation of Travelers to

contribute to the defense and indemnity costs for properly noticed Asbestos Claims is limited to

its pro rata share "based on the four years of acknowledged coverage, 1976-1980."  (See

December 9, 2011 Order, at 24) ("Travelers must contribute its pro rata share of defense and

indemnity costs based on the four years of acknowledged coverage, 1976-1980, for claims of

which it received, within a reasonable time, a complaint and/or letter identifying Fulton as the

insured and any reasonably obtainable information regarding the injured parties and the nature of the occurrences."). Thus, Travelers respectfully submits that because Fulton's Crossclaim seeks to impose upon Travelers a share of defense costs for the Asbestos Claims that exceeds Travelers pro rata share for these costs, the relief sought in Fulton's Crossclaim is contrary to the March 25, 2010 and December 9, 2011 Orders and should be dismissed with prejudice as to Travelers.

B.  Fulton Has Responsibility For All Shares Allocated to Kemper's Policy Years

Notwithstanding the Court's directive in *Fulton I* that defense costs be allocated on a pro rata, time-on-the-risk basis, Fulton's Crossclaim improperly seeks to force Travelers (and presumably Fulton's other solvent insurers) to step into the shoes of Fulton's insolvent insurer, Kemper, and pay for the defense costs allocated to Kemper's policy years. However, under New York law, Fulton – not Travelers – has responsibility for the payment of any allocated share of defense or indemnity costs for the Asbestos Claims that trigger Kemper's policy years. Thus, this Court should reject Fulton's attempt to circumvent the Court's prior orders and established New York law.

As recognized by this Court, the Second Circuit concluded in *Stonewall* that "proration-to-the-insured is a sensible way to adjust the competing contentions of the parties in the context of continuous triggering of multiple policies over an extended span of years" and that "such proration is appropriate as to years in which [the policyholder] elected not to purchase insurance or purchased insufficient insurance . . . ." *Stonewall*, 73 F.3d at 1203; (December 9, 2011 Order, at 11-12) ("[T]he Second Circuit has explicitly endorsed a 'proration-to-the-insured approach' by which a pro rata share of liability is assigned to the insured for any uninsured or insufficiently insured portion of time during a particular claimant's injury") (citing *Stonewall*, 73 F.3d at 1202-03). Decisions since *Stonewall* have confirmed that the insured must cover years of

insolvent insurance.  *See Cont'l Cas. Co. v. Emplrs Ins. Co. of Wausau*, 22 Misc. 3d 729, 739

(N.Y. Sup. Ct. Oct. 14, 2008) (observing that solvent insurers "should not be forced to pick up

coverage for periods where [the insured] chose to obtain an insurance policy with an insurance

company that became defunct through no fault of [the solvent insurers]," and that, as a result,

"where exposure includes periods for which [the insured] was covered by . . . the insolvent

insurer, or was uninsured, those periods have to be included in allocating and charged to [the

insured]"); *Corning*, 2012 WL 7984466 , 2012 N.Y. Misc. LEXIS 6531 at *60 (rejecting

allocation approach that would force a solvent insurer to pay for the portion of defense costs

attributable to an insolvent primary level insurer); *Noment Mgt. Corp. v. Virgina Surety Co., Inc.*,

No. 600612/2008, 2012 WL 10007753, 2012 N.Y. Misc. LEXIS 6656, at *10, 2012 N.Y. Slip.

Op. 33697(U) (N.Y. Sup. Ct. Apr. 2, 2012) (Sherwood, J.) (stating that "other insurers on the

risk are not responsible for the pro rata share attributed to periods covered by insurers that are

now insolvent, but rather such periods are attributed to the insured"); *see also Liberty Mut. Ins.*

*Co. v. Fairbanks Co.*, 170 F. Supp. 3d 634, 642 (S.D.N.Y. Mar. 22, 2016) (observing that, under

a pro rata allocation, the policyholder is responsible for an insolvent insurer's "orphan share"),

*reconsideration granted on other grounds*, 2016 WL 4203543, (S.D.N.Y. Aug. 8, 2016).

        In *Continental*, the court issued findings of fact and conclusions of law in the

second phase of a trial in a declaratory judgment action regarding insurance coverage for Robert

A. Keasbey Company ("Keasbey") in connection with more than 10,000 underlying asbestos

bodily claims asserted against Keasbey.  The court in *Continental* observed that although

American Mutual Insurance Company ("American Mutual") issued policies to Keasbey from

1946 through 1968, American Mutual was later liquidated and, as a result, the parties disputed

whether Keasbey or Keasbey's solvent insurers should be responsible for American Mutual's

allocated shares.  The court held that Keasbey's solvent insurers "should not be forced to pick up

coverage for periods where defendant Keasbey chose to obtain an insurance policy with an

insurance company that became defunct through no fault of plaintiffs or defendant One Beacon,

and plaintiffs and defendant Lamorak should not be forced to become a guarantor for the

insolvent insurance company."  *Id.* at 739.  As explained by the court:

> They should only be responsible for their time on the risk, which is
> all that defendant Keasbey bargained and paid premiums for.  If
> the conclusion were otherwise, hypothetically an underlying
> plaintiff who was exposed to defendant Keasbey's asbestos at
> Indian Point from 1946 through 1990, would be afforded coverage
> for a period well beyond what was contracted for in the policies of
> defendant One Beacon and plaintiffs.

*Id.*; *see also Breed v. Insurance Co. of North America*, 46 N.Y.2d 351 (1978) ("This court may

not make or vary the contract of insurance to accomplish its notions of abstract justice or moral

obligation, since '[equitable] considerations will not allow an extension of the coverage beyond

its fair intent and meaning in order to do raw equity and to obviate objections which might have

been foreseen and guarded against.'").

In *Corning*, the insurers issued primary, excess and umbrella policies to the

policyholder, Corning, Inc. ("Corning"), from 1962 through 1985.  *Corning*, 2012 WL 7984466,

2012 N.Y. Misc. LEXIS 6531 at *15.  Although Century Indemnity Company ("Century"),

Lumbermens and The Home Insurance Company ("Home") each issued primary-level policies to

Corning, Home later was declared to be insolvent. [10]  The court in *Corning* allocated defense and

indemnity costs among the policyholder's insurers on a pro rata, time-on-the risk basis for

underlying asbestos bodily injury claims resulting from exposure to asbestos-containing

---

[10] As discussed, the Circuit Court of Cook County, Illinois subsequently entered an order
declaring Lumbermens to be insolvent and placing it in liquidation.

products.  The court made clear that Corning, not Corning's solvent insurers, is responsible for the payment of defense and indemnity costs allocated to Home's policy years.  *Id.* at *60.

In addition, the New York Court of Appeals has recently held that the insured is also responsible for periods in which no applicable insurance was purchased, regardless of whether such insurance was unavailable to the insured.  *Keyspan*, 31 N.Y.3d at 62-63.  In *Keyspan*, the Court rejected the "'unavailability exception' to the general rule that a policyholder is self-insured and on the risk for periods of time when insurance coverage was not obtained."  *Id.* at 59.  As explained by the Court, "the unavailability rule is inconsistent with the contract language that provides the foundation for the pro rata approach – namely, the 'during the policy period' limitation – and that to allocate risk to the insurer for years outside the policy period would be to ignore the very premise underlying pro rata allocation."  *Id.* at 61.

Here, the Court in *Fulton I* already ordered that the defense and indemnity costs be allocated on a pro rata basis among the insurers and held that Fulton is responsible for a pro rata share of indemnity costs for uninsured periods.  The Court of Appeals' decision in *Keyspan* again confirms that Fulton, not Travelers, is responsible for costs allocated to periods in which Fulton has no insurance.  Accordingly, to the extent Travelers received proper notice of an Asbestos Claim, as defined in the Court's December 9, 2011 Order, Travelers share of defense and indemnity costs, if any, for that Asbestos Claim cannot exceed its pro rata, time-on-the-risk share of such costs.  Therefore, Fulton's attempt to impose a greater share of defense costs on Travelers as a result of the insolvency of Kemper is contrary to New York law and warrants the dismissal of Fulton's Crossclaim as to Travelers.

Moreover, as previously discussed, requiring Fulton to pay for the defense and indemnity costs that are allocated to Kemper's policy years would not lead to an inequitable

result because Fulton has sought payment from the liquidator for the estate of the Lumbermens

Companies for the defense and indemnity costs for the Asbestos Claims.  The New York

Supreme Court has already appointed the Superintendent of Financial Services of the State of

New York as ancillary receiver (the "Ancillary Receiver") and, in conjunction with the Illinois

court, entered orders authorizing any insured under an insurance policy issued by AMICO or

AMM (*i.e.*, Kemper) to file a proof of claim, including contingent claims, with the Director of

Insurance of the State of Illinois (the "Domiciliary Liquidator").  *In re Ancillary Receivership of*

*American Manufacturers Mut. Ins. Co.*, No. 400533/2013 (N.Y. Sup. Ct. June 19, 2013)

("Liquidation proceedings commenced in another state on behalf of an insurer domiciled in that

state, permits New York residents to file their claims either with the ancillary receiver or

domiciliary receiver."); *In re Ancillary Receivership of American Motorists Ins. Co.*, No.

400532/2013 (N.Y. Sup. Ct. June 19, 2013) (same); *see also N.Y. Ins. Law* § 7432(b) ("Where a

liquidation, rehabilitation or conservation order has been entered in a proceeding against an

insurer under this article, all persons who may have claims against such insurer shall present the

same to the liquidator . . . .").

      The New York and Illinois courts also required the Domiciliary Liquidator and

Ancillary Receiver to provide notice to AMICO's and AMM's policyholders of the claim filing

deadlines and procedures.  (See August 1, 2013 Order, Exh. N to Mauriello Affirm.); (see also

June 19, 2013 Order, Exh. O to Mauriello Affirm.).  These notices make clear that:

> [A]ny insured under an insurance policy issued by AMICO [or
> AMM] has the right to present and file with the Domiciliary
> Liquidator a proof of claim setting forth a contingent claim on or
> before the Claim Filing Deadline. . . .  [A]ny insured's contingent
> claim for which a proof of claim was received by the Domiciliary
> Liquidator by the Claim Filing Deadline but which is not
> liquidated by the Contingent Claim Deadline may be estimated for

purposes of participating in any distribution(s) of estate assets,
unless otherwise directed by the Illinois Court.

(Exhs. H-I to Mauriello Affirm.).[11]   It is Travelers understanding that Fulton has already applied

to the New York Liquidation Bureau for Kemper's allocated share of both defense and indemnity

costs and that Fulton's application remains pending.  (Lightfoot Aff., at ¶¶ 5-6).  Thus, there is

no reason, either legal or factual, for this Court to now reallocate Kemper's allocated share to

Travelers (or any of Fulton's other insurers).  However, as discussed above, regardless of

whether the New York Liquidation Bureau agrees to pay for Kemper's share of defense and

indemnity costs for the Asbestos Claims, Travelers still would not be responsible for

contributing, in whole or in part,[12] to the payment of Kemper's allocated shares.  Instead, New

York law makes clear that Fulton – not Travelers – is responsible for the payment of those costs

allocated to Kemper's policy years.

        As a result, Travelers respectfully submits that Fulton's Crossclaim which seeks a

declaration that Travelers must pay for the share of defense costs allocated to the insolvent

Kemper's policy years fails as a matter of law and should be dismissed by the Court.

---

[11] Additionally, the August 1, 2013 Order entered by the Illinois court stated that "[t]he
Liquidator shall accept as a timely filed proof of claim documentation in the Lumbermens
Companies' books and records which, taken as a whole, comply with the requirements of Section
209(1)(a), and the Liquidator shall advise claimants, who have not previously filed a proof of
claim with respect to such a claim, that their claim is timely filed based upon documentation in
the Lumbermens Companies' records and that they need not present a proof of claim form with
respect to that particular claim."  (Exh. N to Mauriello Affirm.).

[12] If for some reason the Court determines that Travelers has some obligation to pay a portion of
the defense or indemnity costs allocable to Kemper, then Kemper's share needs to be allocated
across all parties (or at least all insurers) and Kemper's share would not be all Travelers
responsibility.

<u>CONCLUSION</u>

For the foregoing reasons, Travelers respectfully requests that the Court grant

Travelers motion for partial summary judgment and dismiss Fulton's Crossclaim because, under

New York law and the Court's prior orders in *Fulton I*, Travelers has no obligation to pay, in

whole or in part, for defense costs for the Asbestos Claims which are allocated to the policy

years of American Manufacturers Mutual Insurance Company and/or American Motorists

Insurance Company.

By:   s/Robert W. Mauriello, Jr.
          Stephen V. Gimigliano (No. 516595)
          Robert W. Mauriello, Jr. (No. 516594)
          Jennifer L. Schoenberg (No. 519378)
          GIMIGLIANO MAURIELLO & MALONEY, P.A.
          163 Madison Avenue, Suite 500
          P. O. Box 1449
          Morristown, New Jersey 07962-1449
          (973) 946-8360

          3 Park Avenue, 22nd Floor
          New York, New York 10016
          (646) 859-5580

          Attorneys for Defendant
          Travelers Casualty and Surety Company
          (f/k/a The Aetna Casualty and Surety
          Company)

Dated: June 13, 2018