**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LAMORAK INSURANCE COMPANY**
(f/k/a OneBeacon America Insurance Company),

                               **Plaintiff,**

   vs.                                         5:13-cv-1525
                                                        (MAD/TWD)
**FULTON BOILER WORKS, INC.**, *et al.*,

                               **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**KENNEDYS CMK LLP**                     **KRISTIN V. GALLAGHER, ESQ.**
570 Lexington Avenue, 8th Floor          **JOANNA L. YOUNG, ESQ.**
New York, New York 10022              **MAX W. GERSHWEIR, ESQ.**
Attorneys for Plaintiff

**GIMIGLIANO MAURIELLO & MALONEY**   **STEVEN V. GIMIGLIANO, ESQ.**
163 Madison Avenue, Suite 500           **ROBERT W. MAURIELLO, ESQ.**
Morristown, New Jersey 07962          **JENNIFER L. SHOENBERG, ESQ.**
Attorneys for Defendant Travelers Casualty
and Surety Company

**McCARTER & ENGLISH, LLP**            **NICHOLAS M. INSUA, ESQ.**
Worldwide Plaza                                **DAVID C. KANE, ESQ.**
825 Eighth Avenue, 31st Floor
New York, New York 10019
Attorneys for Defendant/Third-
Party Plaintiff Fulton Boiler Works, Inc.

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

     Plaintiff Lamorak Insurance Company (f/k/a OneBeacon America Insurance Company,

"Lamorak") commenced this action on December 11, 2013, against Defendants Fulton Boiler

Works, Inc. ("Fulton"), Employers Insurance Company of Wausau and Nationwide Mutual

Insurance Company (together, "Wausau"), and Travelers Casualty and Surety Company ("Travelers"), seeking contribution for litigation costs incurred over periods of time when Fulton was uninsured or covered by one or more policies. Lamorak, Wausau, and Fulton have since entered into a settlement agreement and no longer seek a judgment from this Court on issues between them in this action.

Fulton now moves for partial summary judgment against Travelers, arguing that Travelers cannot assert late notice as a defense. *See* Dkt. No. 150. Travelers moves for partial summary judgment against Fulton, arguing that res judicata precludes Fulton from litigating the notice issue and that under the decision in the prior litigation, the alleged notices are substantively deficient. *See* Dkt. No. 151. Travelers also moves for partial summary judgment on Fulton's cross-claim, which seeks equitable contribution and further seeks to strike the affidavit of Martin Martinovic. *See* Dkt. No. 152. Lamorak moves for summary judgment against Travelers seeking equitable contribution and leave to amend the Complaint to conform to the proof. *See* Dkt. No. 153.

**A.     Local Rule 7.1**

Counsel is reminded to endeavor to submit papers that are clear and helpful to the Court. Certain papers required by the Local Rules have not reflected the purpose of those rules. For example, paragraph 33 of Defendant Fulton's Statement of Material Facts asserts that, "[f]or each of the thousands of Asbestos Lawsuits, the list identifies, among other things, the claimant, court index number, and the alleged disease." *See* Dkt. No. 159-1 at 33. Travelers "denies the allegations as characterized by Fulton in paragraph 33 and refers to the September 2008 Letter/List for the precise information contained therein." *Id.* However, that "precise information contained therein" appears to be exactly the information as characterized by paragraph 33—namely, the claimant, court index number, and the alleged disease.

Local Rule 7.1 provides:

> The opposing party shall file a response to the Statement of
> Material Facts. The non-movant's response shall mirror the
> movant's Statement of Material Facts by admitting and/or denying
> each of the movant's assertions in matching numbered paragraphs.
> Each denial shall set forth a specific citation to the record where the
> factual issue arises. The Court shall deem admitted any properly
> supported facts set forth in the Statement of Material Facts that the
> opposing party does not specifically controvert.

The purpose of this rule is to clarify the summary judgment record and to make it easier for the Court to locate the relevant support in the record. These vague "denials" are not specific contradictions, are unhelpful, and do not comply with the Local Rule. If counsel has particular reasons for denying statements such as this, they should clearly set forth such reasons in the counter-statement.

## II. BACKGROUND

Fulton, Lamorak, Wausau/Nationwide, and Travelers were parties to a prior declaratory judgment action involving the same insurance policies at issue here. *See Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, 828 F. Supp. 2d 481 (N.D.N.Y. 2011); *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, No. 5:06-CV-1117, 2010 WL 1257943, *1-9 (N.D.N.Y. Mar. 25, 2010). The factual history as set forth in that decision is largely unchanged. *See* Dkt. Nos. 59-2, 78-4, and 82-1. From 1949 through the mid-1970s, Fulton manufactured boilers that allegedly contained asbestos. *See Futon*, 828 F. Supp. 2d at 486.

> [I]t is generally agreed that a combination of comprehensive
> general liability policies issued by AMICO, OneBeacon, Travelers,
> and Wausau covered Fulton for asbestos exposure risks from 1976
> until 1993. Specifically, Fulton was covered by Travelers from
> October 1976 through October 1980, OneBeacon from October
> 1980 through October 1983, Wausau from October 1983 through
> October 1984, and AMICO1 from October 1984 through September
> 1993—when an asbestos liability exclusion was added to the policy.

*Id.* at 486-87. In the early 1990s, Fulton was sued in thousands of cases involving asbestos exposure, and the number of these lawsuits increased in 1998. *See id.* at 487. In 1991, Fulton initially provided the underlying lawsuits to Kemper and Lamorak per the policies known to Fulton at that time. *See id.* at 487; Dkt. No. 82-1 at 4. Lamorak and Kemper entered into a cost-sharing agreement for the defense costs, with Lamorak paying 25% and Kemper paying 75%. *See Fulton*, 828 F. Supp. 2d at 487. The agreement allowed for modification if new insurers were identified. *See id.* The Wausau insurance policy was discovered in December 2005. *See id.*

"In October 2001, Plaintiff requested that Travelers conduct a policy search with respect to coverage for the Asbestos Claims. On or about January 2004, Travelers agreed to participate in the defense of the asbestos claims, but based on only a single year of coverage." *Fulton*, 2010 WL 1257943 at *3. On January 8, 2004, Travelers sent a letter to Fulton to that effect for the period from October 1, 1979 to October 1, 1980. *See* Dkt. No. 151-3 at 106. "On April 30, 2009, Travelers conceded that it owed four years of coverage," for the years 1976-1980. *Fulton*, 2010 WL 1257943 at *3.

In the prior actions, the parties sought judgment declaring their obligations to defend and indemnify Fulton in connection with thousands of lawsuits filed against Fulton. *See generally Fulton*, 828 F. Supp. 2d at 481-99; *Fulton*, 2010 WL 1257943 at *1-9. Together, the 2010 and 2011 Fulton decisions addressed and resolved the following summary judgment or partial summary judgment motions: (1) Fulton's motion seeking judgment that Lamorak, Wausau/Nationwide, and Travelers have an obligation to pay 100% of the defense costs associated with litigation of the underlying lawsuits; (2) motions by Lamorak, Wausau/Nationwide, and Travelers seeking judgment that Plaintiff is required to contribute an

equitable pro rata share to its own defense for uninsured or self-insured periods; (3) Travelers' motion for a judgment that Fulton was obligated to pay a pro rata share of indemnity costs related to years it was uninsured; (4) Fulton's motion for a judgment that Lamorak and Kemper must continue to fully indemnify Fulton and that Fulton cannot be allocated any share of indemnity costs; (5) Lamorak's motion for a judgment that Fulton is obligated to pay a pro rata share of the indemnity costs for years it was uninsured; (6) Lamorak's motion for a judgment that Travelers received proper notice of all underlying lawsuits and must contribute a pro rata share of defense and indemnity costs based on its four years of coverage; (7) Wausau/Nationwide's cross-motion seeking that Fulton contribute to indemnity costs; and (8) Travelers' cross-motion for a judgment that it cannot be allocated defense or indemnity costs related to claims for which it was not provided proper notice. *See Fulton*, 828 F. Supp. 2d at 486-99; *Fulton*, 2010 WL 1257943 at *3-9.

In the 2010 decision, the court held that Fulton was entitled to all its defense costs related to the litigation of the underlying lawsuits that had been brought to date, deferring the question of whether Fulton must contribute to defense costs until the underlying lawsuits are shown to involve occurrences during self-insured periods. *See Fulton*, 2010 WL 1257943, at *8. The court also noted that pro rata allocation of expenses among the insurers is the applicable method, and the court further advised that Lamorak, Wausau/Nationwide, and Travelers owe defense costs in future underlying lawsuits where the allegations could conceivably result in liability covered by a policy at issue. *See id.*

The 2011 decision addressed the allocation of indemnity costs, noting that the 2010 decision on defense costs had no bearing on indemnity allocation. *See Fulton*, 828 F. Supp. 2d at 488. To properly allocate the indemnity costs, the court determined that the underlying lawsuits

5

"must be considered as multiple independent occurrences rather than grouped into a single broad occurrence." *Fulton*, 828 F. Supp. 2d at 489. The court found that policies are triggered during a progressive bodily disease "with injury-in-fact recurring throughout the disease process," even if "injury was also shown to have occurred in an earlier period covered by a prior policy." *Id.* After the time of the claim is determined, the liability for each claim is then prorated among the insurers according to their coverage during the overall period of time the injury-in-fact was occurring. *See id.* at 490.

Notably, the court stated, "Fulton must be assigned a pro rata share of indemnity costs for any uninsured or insufficiently insured portion of a particular claimant's injury." *Id.* The court declared that, for the period from 1949 through October 1976, Fulton is allocated with its share of indemnity costs for claims alleging injury-in-fact prior to October 1976. *See id.* at 491. Fulton is obligated to pay, without indemnification from the insurers, for claims alleging injury-in-fact that began after October 1, 1993, but "Fulton cannot be allocated with any share of indemnity costs for the portion of a claimant's injury-in-fact—which began prior to October 1, 1993—that continues after October 1, 1993." *Id.* at 494.

Kemper, Lamorak, and Wausau each sought a judgment that Travelers must contribute for its pro rata share of defense and indemnity costs made after October 10, 2001. *See id.* at 494-95. Travelers argued that it did not receive notice under its policy provisions. *See id.* at 495. Because compliance with the notice provisions of an insurance policy is a condition precedent to the insurer's liability under the policy, an insurer is relieved of its duties to defend and indemnify if proper notice was not provided. *See id.* at 495 (citing *Webster ex rel. Webster v. Mount Vernon Fire Ins.*, 368 F.3d 209, 214 (2d Cir. 2004)). The policy between Fulton and Travelers contained a notice provision, which required:

> In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

*Id.* (internal quotation marks and citation omitted).

The court denied all the parties' motions and held that Travelers' contribution for its pro rata share of defense and indemnity costs requires "a case-by-case analysis of the underlying claims and documents provided to Travelers." *Id.* at 497. The court ruled that "for claims of which [Travelers] received, within a reasonable time, a complaint and/or letter identifying Fulton as the insured and any reasonably obtainable information regarding the injured parties and the nature of the occurrences, Travelers must contribute its pro rata share of defense and indemnity costs." *Id.* The court specifically advised that the 2010 and 2011 decisions serve "as direction for the parties going forward" and to bind the parties when resolving past, pending, and future underlying lawsuits. *Id.*

During this prior litigation, several sets of documents were made available to Travelers. On September 17, 2008, Fulton's defense counsel for the underlying asbestos claims provided Travelers with a list of asbestos lawsuits pending in New York. *See* Dkt. No. 60-7. The 2008 list identifies the claimant, the court index number, and the alleged disease. *Id.* During discovery, Fulton made available approximately one-hundred boxes of documents and pleadings, accompanied by an index of those materials, at Fulton's Pulaski, New York location. *See* Dkt. Nos. 60-4, 60-5. On August 2, 2012, another list similar to the 2008 list was provided to

7

Travelers, identifying the claimant, the law firm, the court index number, date of filing, venue, and status. *See* Dkt. No. 150-1.

Since the previous litigation, Kemper has been placed in liquidation. *See* Dkt. No. 82-1 at 26. On June 19, 2013, the Superintendent of Financial Services of the State of New York was appointed as the ancillary receiver of Kemper. *See* Dkt. No. 82-1 at 28. On October 22, 2013, the Supreme Court of New York, County of New York, entered orders establishing November 10, 2014, as the deadline to file proof of claims, including contingent claims, and November 10, 2015, as the deadline for supporting documents for contingent claims with the Director of Insurance of the State of Illinois. *See id.* at 29. The New York court also ordered the ancillary receiver to provide notice of the claim filing deadlines to all creditors, claimants, and interested persons located in the State of New York. *See id.* Travelers believes that Fulton has applied to the New York Liquidation Bureau for payment of Kemper's share of allocated defense and indemnity costs for the underlying lawsuits. *See* Dkt. No. 78-4 at 30. Travelers represented that, under a reservation of rights, it has been paying a percentage share of Kemper's allocated defense costs since the time of Kemper's insolvency. *See id.* at 31.

Lamorak, Wausau/Nationwide, and Fulton have entered into a settlement agreement and no longer seek a judgment from this Court as to the issues between them. *See* Dkt. No. 82-1 at 38; Dkt. Nos. 71, 73. Lamorak has one claim pending against Travelers where it alleges that Travelers has refused to pay or reimburse Lamorak for amounts paid toward the defense and indemnity of Fulton in certain underlying lawsuits covered by Travelers' policy, but for which Travelers has refused to contribute due to untimely notice. *See* Dkt. No. 1 at 83.

### III. DISCUSSION

**A.     Summary Judgment**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Late-Notice Defense**

The 2011 decision ordered that "for claims of which [Travelers] received, within a reasonable time, a complaint and/or letter identifying Fulton as the insured and any reasonably obtainable information regarding the injured parties and the nature of the occurrences," Travelers must contribute its pro rata share of defense and indemnity costs. *Fulton*, 828 F. Supp. 2d at 497. Timeliness is measured "'from the time when the insurer first learns of the grounds for disclaimer

of liability or denial of coverage.'" *GPH Partners, LLC v. Am. Home. Assur. Co.*, 87 A.D.3d 843, 843-44 (1st Dep't 2011) (quoting *First Fin. Ins. Co. v. Jetco Contr. Corp.*, 1 N.Y.3d 64, 68-69 (2003)). When an insurer becomes "'sufficiently aware of facts which would support a disclaimer,' the time to disclaim begins to run, and the insurer bears the burden of explaining any delay in disclaiming coverage." *Id.* (quoting *Hunter Roberts Constr. Group, LLC v. Arch Ins. Co.*, 75 A.D.3d 404, 409 (1st Dep't 2010)).

Whether Travelers received sufficient notice turns upon the sufficiency and timeliness of the September 2008 list, the boxes of lists and pleadings made available to Travelers (together, the "2008/2009 materials"), and the August 2, 2012 list. The Court will address the sufficiency and timeliness of the 2008/2009 materials and 2012 list but declines to determine, on a case-by-case basis, whether any given claim has been properly noticed—this is the job of the parties.

### *1. Sufficiency and Timeliness*

Fulton contends that these materials constitute proper timely notice because they comport with the requirements of the 2011 decision. The 2011 decision found that materials constituted proper notice when they included the names of the plaintiffs who filed the claims, the associated docket numbers, and the dates they were filed. *See Fulton*, 828 F. Supp. 2d at 496 ("These communications adequately identified the insured, provided the names of the injured parties, informed Travelers that the occurrences were related to asbestos exposure, and were provided to Travelers within a reasonable time"). The court found that although the letters that it identified were not accompanied by copies of the complaints, they nonetheless satisfied the notice provisions. *See id.* Indeed, the 2008/2009 materials and the 2012 list contain exactly the

information substantively required by the 2011 decision. The Court sees no reason to depart from this prior judgment and finds that these documents are sufficient with respect to content.[1]

On the issue of timeliness, notice provisions "in insurance policies afford the insurer an opportunity to protect itself . . . and the giving of the required notice is a condition to the insurers liability." *Security Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440 (1972) (citations omitted). There may be instances "that will explain or excuse delay in giving notice and show it to be reasonable." *Id.* Failure to give notice will not invalidate a claim if it is shown "not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter." N.Y. Ins. Law § 3420(a)(4).

"[A] repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy." *H.S. Equities, Inc. v. Hartford Acc. And Indem. Co.*, 661 F.2d 264, 270 (2d Cir. 1981). In cases involving bodily injury, the "'doctrine of equitable estoppel can be applied to prevent an insurer from asserting valid defenses or exclusions to coverage.'" *Frazier v. Royal Ins. Co. of Am.*, 110 F. Supp. 2d 110, 115 (N.D.N.Y. 2000) (quoting *Mattimore v. Patroon Fuels, Inc.*, 103 A.D.2d 981, 92 (3d Dep't 1984)). The plaintiff in such a case "must show that they have been prejudiced by the insurer's actions and/or that they relied on some conduct by the insurer to their detriment." *Id.*

As discussed above, Travelers acknowledged its coverage of the years 1979-1980, and began participating in Fulton's defense of the underlying claims in 2004. It did not acknowledge

---

[1] The Court notes that Travelers devotes nearly an entire brief to the issue of litigation activity, without supporting law on point. *See* Dkt. No. 162. Regardless, the issue is not whether "litigation activity" may constitute notice or disclaimer. As discussed below, the issue is whether the insured became sufficiently aware of facts that would support a disclaimer. Therefore, the Court finds Travelers' "litigation activity" arguments to be without merit.

coverage of the remaining policy years until April 30, 2009. Absent this delay in acknowledgment, notice in 2008 and 2009 would have been untimely. However, the Court finds the present circumstances unusual because the existence of the policies was in dispute, and because Travelers admitted to certain policy years substantially earlier than the three additional policy years.

Here, Travelers did not repudiate liability in the typical sense, such as by declaring that Fulton's claims were not covered by an *existing* policy. Rather, Travelers denied the existence of *any* such policy; and so, from Fulton's perspective, there would have been no grounds upon which to submit notice. Participating in a lawsuit instead of providing traditional notice constitutes such reliance as required for the Court to apply the doctrine of equitable estoppel. While there was no strict waiver of the notice requirement by reason of repudiation, it would nevertheless be contrary to reason and principles of equity to require that an insured comply with the notice requirements of a policy that the insurer claims does not even exist. The Court finds that in these circumstances it was not "reasonably possible to give such notice" where no contractual instrument had been identified.

Because coverage of the years 1976 to 1979 was conceded in April 2009—before which the 2008 list was provided and shortly after which the 2009 index and boxes were provided—the Court finds that these documents constitute proper timely notice of the underlying claims therein contained. Equity mandates that an insurer may not simultaneously deny coverage for lack of a policy while also seeking refuge in the notice terms of the policy once discovered. The Court cannot determine on this record whether the 2012 list contains the same, different, or overlapping information as the 2008 list. It is further unclear the extent to which any of the underlying claims has been disclaimed. However, these documents made Travelers "sufficiently aware of facts that

12

would support a disclaimer"—namely, the information required by the 2011 decision—and thus may constitute proper notice. *See GPH Partners, LLC v. Am. Home. Assur. Co.*, 87 A.D.3d at 843-44.

With that said, the Court will declare neither that each and every claim described in these documents has been properly noticed, nor that Travelers has failed to disclaim any of the same. It would be contrary to judicial economy for the Court to sift through the thousands of listed claims to see which ones have been resolved, disputed, or properly disclaimed, where the parties have not first made a good faith effort to do so in cooperation.

The Court provides the following guidance to the parties: Since Travelers acknowledged coverage from 1979-1980 in 2004, to the extent that any claims arose before such acknowledgment, notice in the 2008 or 2009 materials is untimely. Notice of claims that arose prior to 2004 covered by the 1979-1980 policy years must have been noticed within a reasonable period from the time of acknowledgment and 2008 is far too late. The 2008 and 2009 materials constitute proper notice of claims covered from 1976-1979 because these materials contained the information required by the 2011 decision and were provided to Travelers within a reasonable time of acknowledgment (in some cases before acknowledgment). For the 2012 materials, any claims duplicative of the 2008 or 2009 materials are irrelevant and need not be addressed by the Court. For any new claims in the 2012 materials, the parties should endeavor to resolve whether each individual claim, on a case-by-case basis, was timely noticed and/or disclaimed, consistent with this Court's holding.

### 2. *Res Judicata*

Travelers' argument regarding preclusion misstates the scope of res judicata. The doctrine of res judicata, or claim preclusion, "preclude[s] later litigation if the earlier decision was (1) a

13

final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)) (other citation omitted). "Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action[] and of issues that could have been raised in the adjudication of that claim." *Colonial Acquisition P'ship v. Colonial at Lynnfield, Inc.*, 697 F. Supp. 714, 717-18 (S.D.N.Y. 1988) (quoting *Nat'l Labor Relations Bd. v. United Techs. Corp.*, 706 F.2d 1254, 1259 (2d Cir. 1983)).

Travelers argues that Fulton's alleged noticed is procedurally deficient because it relies upon documents available during the previous litigation. *See* Dkt. No. 159 at 7. Travelers also contends that Fulton is attempting to use this summary judgment motion as a motion for reconsideration in disguise to re-litigate issues that have already been decided.

Contrary to Travelers' position, the 2011 decision leaves open the case-by-case analysis of which claims have been appropriately noticed. The 2011 decision dealt only with whether Travelers had any obligation to contribute, whereas the present exercise is to determine for which underlying asbestos claims Travelers has such an obligation. Since there has been no litigation on this separate issue, res judicata simply does not apply. Because the issue has not been litigated, Fulton is clearly not disguising any motion for reconsideration. And because the issues presently contested are not the same as those in the prior litigation, nothing prevents the parties from using documents that were available during that prior litigation. Lamorak and Fulton do not ask the Court to determine coverage "on a blunderbuss basis," as Travelers argues—and regardless, the Court has not disposed of the present issues on such a broad basis. *See* Dkt. No. 151-1 at 23.

Accordingly, Travelers' motion for partial summary judgment regarding Travelers' notice defense is denied. Fulton's motion for partial summary judgment regarding Travelers' notice defense is granted in part with such limitations as discussed. The Court is not making a "blunderbuss" finding that any, and certainly not all, of the underlying claims in these documents have been properly noticed; that is for the parties to discern by applying this holding. The Court holds that the 2008 and 2009 materials constitute sufficient notice under the meaning of the 2011 decision subject to the limitations discussed above. The parties remain responsible for acting in accordance with the terms of the 2011 decision.

**C.     Cross Claims for Equitable Contribution and Amendment**

Fulton and Lamorak seek contribution from Travelers for defense and indemnity costs that they claim have been underpaid. Fulton argues that because the Court in its 2010 decision required that the insurers (including Kemper) were responsible for "all of Plaintiff's outstanding defense costs in the underlying lawsuits," that Travelers is responsible for a portion of now-insolvent Kemper's share of defense costs. *See* Dkt. No. 158-1 at 8-11; *Fulton*, 2010 WL 1257943, at *8. The 2010 decision explicitly states that "with regard to allocation of expenses among Defendants [the insurers], pro rata allocation is the applicable standard." *Fulton*, 2010 WL 1257943, at *8.

In the context of the 2011 decision, because no party was insolvent, it was accurate to say that "all" of the defense costs should be borne by the insurers on a pro rata basis. Because Kemper is now insolvent, that is no longer the case. The 2011 decision contemplated that the insurers had a duty to defend "*unless* the evidence in a particular case establishes that the 'alleged occurrence' occurred, in full or in part, during an uninsured period." *See Fulton*, 2010 WL 1257943, at *7 (emphasis added). The 2011 decision addressed allocation when the record "ha[d]

15

not shown that evidence exists . . . that the 'alleged occurrence' occurred . . . during an uninsured period" because Kemper had not become insolvent. *See id.* Since Kemper is no longer liquid, this assumption is no longer true, and Fulton would be responsible for those defense costs for claims where "the evidence . . . establishes that the 'alleged occurrence' occurred" during Kemper's policy years where no other policy is potentially implicated. *See id.*

The Court can find no precedent that suggests that insurers should be responsible for the defense cost of claims for which there is no reasonable possibility of coverage. "Pro rata" means pro rata according to the years of coverage under the policies of each insurer. However, the duty to defend arises when circumstances suggest "a reasonable possibility of coverage." *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 648 (1993) (citations omitted). Such duty to defend is much broader than the duty to indemnify. *See id.* For all underlying claims where the injury-in-fact suggested by "the four corners of the complaint" gives rise to a reasonable possibility of coverage—that is coverage under the policy years with Travelers—Travelers is responsible for defense costs and may seek contribution from other insurers for overpayment. *See id.*

For such claims that give rise to "no possible factual or legal basis for finding liability covered by the policy[,]" Travelers is not responsible. *See Fulton*, 2010 WL 1257943, at *7. Nothing the parties have argued before this Court changes the responsibilities of the parties under the 2011 decision with respect to contribution. If the "evidence in a particular case establishes that the 'alleged occurrence' occurred" during a period when only Kemper provided insurance, then Travelers need not contribute.[2] *See id.*

---

[2] The Court declines to explore how the parties should seek to recover any amounts already paid that are determined to be solely the responsibility of Kemper.

The factual issues surrounding the claims for equitable contribution remain ripe for trial. Accordingly, Travelers' motion for partial summary judgment on the cross-claims for equitable contribution is denied. Lamorak's motion for partial summary judgment on the issue of contribution for its overpayments in excess of its pro rata share is also denied because on this record, the Court has found no undisputed facts with respect to any particular overpayment or underpayment upon which the Court could enter judgment as a matter of law. The 2011 decision requires that an insurer contribute to another insurer for any overpayments for which the first insurer is responsible. But based on this record, the Court cannot independently verify the amount of or basis for damages. Therefore, the motion is denied as to damages and the issue is left for trial.

The Court finds the pleading of this supposedly "new" claim for equitable contribution unremarkable. The Court is well within its discretion to deem the pleadings amended to conform to the proof pursuant to Rule 15(b) of the Federal Rules of Civil Procedure. *See Clomon v. Jackson*, 988 F.2d 1314, 1323 (2d Cir. 1993). The issues and evidence in this case have revolved around contribution. Travelers has understood the other parties seek contribution in some form based on overpayment, regardless of whether such payments have been on claims characterized as "tendered" or "untendered." As discussed above with respect to the notice issue, it is not whether a claim has been "tendered" or not that is dispositive. The Court finds that these claims for equitable contribution conform to the issues actually raised in this case so far. The Complaint is accordingly deemed amended.

D.   **Martinovic Affidavit**

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to "disclose to other parties the identity of any witness it may use at trial to present evidence under Federal Rule of

17

Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Such disclosure "must be accompanied by a written report—prepared and signed by the witness—" which must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Furthermore, parties "must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Pursuant to Rule 37(c), if a party fails to disclose such information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts have acknowledged that precluding expert testimony is a drastic remedy that "should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules." *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y. 1995) (citation omitted). "The initial question is therefore whether the contested testimony should be characterized as fact or opinion." *United States v. Cuti*, 720 F.3d 453, 457-58 (2d Cir. 2013). The Second Circuit held that where testimony was factually constrained by other testimony and exhibits, the factual nature of hypotheticals/assumptions, and undisputed accounting rules, the testimony was fact testimony. *See id.* at 458. Here, as Plaintiff argues, the testimony provided in the Martinovic Affidavit involves such simple computation based on legal invoices that are part of the record. *See* Dkt. No. 164-3 at 7. Travelers argues that the affidavit should be stricken as undisclosed expert testimony. *See* Dkt. No. 160-1 at 18-22. Here, the Court finds that the Martinovic Affidavit is simple fact testimony because it provides a simple calculation based on factual assumptions made within the affidavit itself. The parties may use or dispute, using other witnesses, the assumptions and testimony in the affidavit to the extent that it is useful. Because it

is not expert testimony, it is not subject to the expert disclosure requirements of Rule 26 and cannot be stricken on those grounds.

The Court finds Travelers' argument that the Martinovic Affidavit serves as a modified computation of damages as required by Rule 26 of the Federal Rules of Civil Procedure without merit. An affidavit regarding damages is simply testimony to prove damages disclosed during discovery like any other type of evidence. Lastly, because the Court does not actually rely upon the affidavit in coming to its decision, there is no prejudice to Travelers that warrants striking the affidavit.

## IV. CONCLUSION

Upon consideration of the entire record, the submissions of the parties, the applicable law, and for the foregoing reasons, the Court hereby

**ORDERS** that Fulton's motion for partial summary judgment on the issue of Travelers' notice defense (Dkt. No. 150) is **GRANTED in part**; the Court further

**ORDERS** that Travelers' motion for partial summary judgment on the issue of Travelers' notice defense (Dkt. No. 151) is **DENIED**; the Court further

**ORDERS** that Travelers' motion for partial summary judgment on the issue of equitable contribution (Dkt. No. 152) is **DENIED**; the Court further

**ORDERS** that Lamorak's motion for partial summary judgment on the issue of equitable contribution (Dkt. No. 153) is **DENIED**; the Court further

**ORDERS** that Travelers' motion to strike the affidavit of Martin Martinovic is **DENIED**; the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 19, 2019
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge